DELAWARE, L. & W. R. CO. v. TROXELL.

(Circuit Court of Appeals, Third Circuit. November 29, 1910.)

No. 1,432.

1. MASTER AND SERVANT (§§ 101, 102*)—CARE REQUIRED OF MASTER—MACHINERY AND APPLIANCES.

A railroad company does not insure the absolute safety of the machinery or appliances it furnishes for the use of its employés, but is bound only to exercise all reasonable care to furnish reasonably suitable and safe machinery and appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 180–184; Dec. Dig. §§ 101, 102.*]

———————————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 112*)—MASTER'S LIABILITY FOR INJURY TO SERV-
ANT—RAILROAD SWITCHES.

Plaintiff's husband, while working as a fireman on an engine on defend-
ant's railroad, was killed in a collision between his engine, which was
drawing a train, and some freight cars which had escaped from a siding
onto the main track. The cars had been placed on the siding the day be-
fore, and left with the brakes set and the wheels securely blocked. They
had remained stationary for 24 hours, and concededly could not have
moved without the releasing of the brakes and the removal of the blocks.
By whom this was done was unknown. *Held*, that defendant was not
chargeable with negligence because it had not equipped the siding with a
derailing switch as an additional safeguard, and under the evidence was
not negligent nor liable for the death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 218–
223; Dec. Dig. § 112.*]

In Error to the Circuit Court of the United States for the Eastern
District of Pennsylvania.

Action at law by Lizzie M. Troxell against the Delaware, Lacka-
wanna & Western Railroad Company. Judgment (180 Fed. 871) for
plaintiff, and defendant brings error. Reversed.

Daniel R. Reese, J. Hayden Oliver, and James F. Campbell, for
plaintiff in error.

George Demming, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and
CROSS, District Judge.

CROSS, District Judge. This action was instituted by Lizzie M.
Troxell, as the widow of Joseph D. Troxell, on behalf of herself and
two minor children, under the Pennsylvania statute, to recover dam-
ages for the death of her husband, on July 21, 1909, caused, as alleged,
by the negligence of the defendant. The deceased at that time was
employed by the defendant company in the capacity of a fireman on a
locomotive engaged in hauling cars in interstate commerce. The dec-
laration alleges, in substance, that the deceased, while in the perform-
ance of his duties, and without any negligence on his part, was killed
through the negligence and carelessness of the defendant, in failing to
supply and keep in repair proper, necessary, and safe devices, whereby
the locomotive on which he was performing his duties came into vio-
lent collision with several runaway cars, causing his death.

It appears that the defendant, in the course of its business, had for
about eight years maintained a siding known as "Albion Siding No.
2," which extended out from its Pen Argyl branch. The siding was
but a few hundred feet long, and connected with the Pen Argyl branch
at a distance of from 300 to 400 feet from Pen Argyl Junction, which
is the point at which the branch joined the main line of the defendant
company. The Pen Argyl branch is itself a blind spur, and extends
only from its junction with the main line to Pen Argyl station. The
deceased, previous to the accident, had been in the employ of the de-
fendant for about three years, for a considerable part of that time as
a brakeman, and later as a fireman. The division upon which he
worked was known as the "Bangor & Portland Division," and ran from

Nazareth to Portland, in northeastern Pennsylvania. On July 19, 1909, Troxell, the deceased, at the request of his engineer, took charge of a locomotive and placed six gondola cars loaded with ashes upon Albion siding No. 2. On the following day it was found necessary to place some cars on the siding at the rear of those, and in order to do so it was first necessary to take them out, which was done, and they were afterwards replaced on the siding. The cars, after having been thus taken out and replaced, were, according to the testimony, securely blocked and braked, and remained in that condition on the siding in question for about 24 hours, when, from some unexplained cause, they got away, ran from the siding onto and over the Pen Argyl branch, and from it to the main track, and thereon for a distance of nearly six miles, when they came into collision with a locomotive drawing a train of loaded freight cars, on which locomotive the deceased was then acting as fireman. As a result of the collision Troxell was killed. At the point on the siding where the cars were when they were freed, the grade was descending, as was also that of the Pen Argyl branch, and of the main track over which the runaway cars passed until within about half a mile of the point of collision, when there is evidence that the grade slightly ascended, which somewhat modified the speed of 45 or 50 miles an hour at which the runaway cars were going, according to the evidence, just prior to the collision. The grade of Albion siding No. 2, was, for a short distance from the point of its junction with the Pen Argyl branch, nearly level. After that there was an upgrade of about 1 per cent., and the cars which ran away were, when they were braked and blocked as above stated, standing on that part of the siding having the ascending grade.

The negligence charged against the defendant, and mainly relied upon by the plaintiff below, lay in the admitted fact that it had not provided the siding on which the cars were placed, with a derailing device whereby, had they been tampered with, or otherwise started, they would have been derailed before entering on the Pen Argyl branch. On the part of the defendant, however, it is urged that inasmuch as it had furnished cars equipped with efficient brakes and other appliances, and as it had left them standing on the siding braked and blocked in such manner that they could not possibly move out unless tampered with, it cannot be charged with negligence for not having, in addition thereto, equipped the siding with a derailing device. The evidence in the case shows that the cars were equipped with brakes which were in good order and condition; that the first brake was "doubled"—that is, the strength of two men was used in applying it; that the four rear cars were also strongly braked; that the wheels of the first two cars were blocked; and that the cars remained securely on the siding for nearly 24 hours. Furthermore, all of the witnesses say that there was no way in which the cars could have been started or moved unless some one first loosened the brakes and removed the blocks. Indeed, the evidence in behalf of the defendant, as to the braking and blocking of the cars, was so strong and convincing that the learned judge below, in refusing a motion for a new trial, admitted that it might "be said to be conclusive that they [the cars] could not

have run away, except as the result of some person loosening the brakes and removing the blocks," and as to how or by whom the brakes were loosened and the blocks removed he admitted that there was no evidence.

It appears that the case was allowed to go to the jury principally upon the theory that, in addition to what the defendant actually did, it should have introduced a derailing device in the siding at some point before it joined the Pen Argyl branch. According to the evidence, however, the defendant had already done all that was necessary to make the cars, not only reasonably, but absolutely, secure from running away. It was not obliged to anticipate and provide against the unlawful acts of marauders. Any theory, however, which might be adopted as to the cause of their starting, would be purely conjectural. There are no facts in the case from which the cause can be inferred. Under such circumstances it was error to allow the jury to speculate about the matter. In Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 277, 45 L. Ed. 361, Mr. Justice Brewer said:

"It is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

Again, under the circumstances, the mere absence of a derailing switch furnished no evidence of, negligence. It is doubtless a valuable device, but there is no statute that requires its introduction, nor does the law impose upon a railroad company the duty of adopting and using the very latest and best means of avoiding accidents. It is only obliged to exercise all reasonable care to furnish reasonably suitable and safe appliances. The rule is carefully stated by Mr. Justice Lamar in Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 1049, 34 L. Ed. 235, in the following language:

"Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employés. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter."

The rule in respect to machinery is the same as that in respect to place. Patton v. Texas & Pacific Railway Co., supra.

The defendant in this case, according to the uncontradicted testimony, secured the cars on the siding in question with, to say the least, reasonable care and safety, and in so doing did all that under the law it was required to do. It was under no obligation to provide

additional or cumulative devices. It is not required to insure against accident. Some stress, however, was laid upon the fact that the siding in question had a grade which descended toward the Pen Argyl branch. That circumstance, however, has no controlling weight, since, according to the testimony, the cars were securely and safely blocked at the place on the siding where they were left. The testimony, therefore, necessarily took into account the uneven grade of the siding at that place.

In Norfolk & Western R. R. Co. v. Cromer's Administratrix, 101 Va. 667, 44 S. E. 898, the court dealt with a situation very like that here presented. It appeared in that case that the deceased, a fireman on an engine drawing a passenger train, which was behind time, and running at a high rate of speed, was killed by a collision between his train and some freight cars which had escaped to the main track from a siding upon which they were stored. But it did not appear how the freight cars, which had their brakes fastened and in a safe condition, escaped. Speaking on that point, the court said that it was a matter wholly of conjecture. After suggesting and commenting upon two possible theories, the court said:

"It is immaterial which theory is adopted. If the brakes which were shown by experience, as well as by direct evidence, to be amply sufficient to hold the cars in position were tampered with, the company would, of course, not be responsible."

It also appeared in the case that, some months prior to the accident, a derailing switch had been installed on the siding, which, however, had been removed before the accident; and it was insisted that its presence would have prevented the accident, and that its removal constituted negligence on the part of the defendant. In dealing with this point the court said:

"In view of the evidence in the case tending to show that the cars on the siding were provided with all the appliances necessary to keep them stationary, and that these appliances and all the rest of the machinery were in good order, it was error to instruct, or to assume in an instruction, that the duty of ordinary care, which the defendant owed to its servant, could only be met by a derailing switch to prevent the moving of cars from the siding to the main track. It is the duty of the master to exercise reasonable care for the safety of his servant; but he is not bound to provide the latest inventions or the most newly discovered appliances. He is not bound to use more than ordinary care, no matter how hazardous the business may be in which the servant is engaged."

Other cases touching the point in question are Grand Trunk, etc., R. Co. v. Melrose, 166 Ind. 658, 78 N. E. 190; Edgar v. Rio Grande & Western Ry. Co., 32 Utah, 330, 90 Pac. 745, 11 L. R. A. (N. S.) 738, 125 Am. St. Rep. 867; Fredericks v. Northern Central R. Co., 157 Pa. 103, 27 Atl. 689, 22 L. R. A. 306.

After a careful consideration of the evidence in the case, we are unable to find anything which reasonably establishes any negligence upon the part of the defendant. Under these circumstances, therefore, the judge erred in refusing to charge the defendant's twenty-eighth request as follows:

"You are instructed that there is no evidence of negligence on the part of the defendant, and your verdict should be for the defendant"

—the denial of which request was covered by the eleventh assignment of error. In the view that we have taken of the case, it is unnecessary to consider the other points raised.

The judgment below is therefore reversed, with costs, and judgment directed to be entered for the defendant non obstante veredicto, pursuant to a motion of that character made and denied by the trial judge, and its refusal assigned for error herein.