AMERICAN LEAD PENCIL COMPANY *v.* NASHVILLE,
CHATTANOOGA & ST. LOUIS RAILWAY.

(*Nashville.*   December Term, 1910.)

1. **CONTRACTS. Express or implied, written or oral; meeting of minds of parties; mutual, definite; free from fraud or undue influence; not against public policy.**

While a contract may be either express or implied, or written or oral, yet it must be created by act of the parties, and must result from a meeting of their minds in mutual assent to its terms, and it must be based upon a sufficient consideration; and it must be mutual, free from fraud or undue influence, and not against public policy, and sufficiently definite to be enforced. (*Post,* p. 64.)

2. **CUSTOM AND USAGE. Custom is a general rule or law arising from usage or repetition of acts; usage may exist without custom, but custom not without usage.**

Usage is a repetition of acts, and differs from custom in that usage is a fact, while custom is the law or general rule which arises from such repetition; and while there may be usage without custom, yet there cannot be a custom without usage accompanying or preceding it. (*Post,* p. 64.)

Case cited and approved:   Cutter v. Waddingham, 22 Mo., 206-248.

3. **SAME. Admissible to explain ambiguity, or as furnishing the rule where the contract is silent, but not to vary or contradict its terms.**

Where a contract is indistinct, ambiguous, or uncertain in its terms, evidence of the usage or custom on the particular point is admissible, like the general law, to explain the same, and as furnishing the rule where the contract is silent, but not

to vary or contradict the written contract, either expressly or impliedly. (*Post, pp.* 64, 65.)

Cases cited and approved: Bedford v. Flowers, 11 Humph., 242; Charles v. Carter, 96 Tenn., 614.

4. **SAME. Usage cannot make a contract, nor prevent the effect of settled rules of law.**

Usage and custom, in legal contemplation, differ radically in many respects from a contract, and the distinction between them is quite apparent; and usage cannot make a contract where there is no contract, nor prevent the effect of the settled rules of law. (*Post, pp.* 64, 65.)

Case cited and approved: Charles v. Carter, 96 Tenn., 614.

5. **CHANCERY PLEADING AND PRACTICE. No relief upon proof of case not alleged in the pleadings; no relief upon proof of usage or custom not alleged, if no contract.**

It is a fundamental principle that the proof must correspond with the allegations in the pleadings, and relief cannot be granted upon proof of a case substantially different from the case made in the pleadings; and a bill seeking relief for the breach of a contract cannot be sustained upon proof of usage or custom, and its breach, where there was no contract, express or implied. (*Post, pp.* 61, 62, 65-67, 68, 69.)

Cases cited and approved: Foster v. Jackson, 8 Bax., 434; Railroad v. Collins, 85 Tenn., 227; Coal Co. v. Daniel, 100 Tenn., 65; Railroad v. Lindamood, 111 Tenn., 457.

6. **SAME. Same. No relief where the bill is based upon a contract, and the proof shows no contract, but a usage or custom of inferior employees not known to the principals.**

The complainant, in an action against a railroad company for the destruction of freight by fire while the car was standing on a siding near complainant's warehouse, alleged that under the contract between complainant and defendant, whenever complainant applied for an empty car, defendant was bound to furnish it as soon as possible, and, upon receipt of notice

Pencil Co. v. Railroad.

that the car was loaded and ready for shipment, it was bound forthwith to remove it from the switch, and promptly start the same toward its destination; but defendant failed promptly to remove the car in question from the siding, after receiving notice that it was loaded, but allowed several freight trains to pass while it was standing on the siding, and left it standing there, and that this default on the part of the defendant was the proximate cause of the loss of the car by fire. The evidence did not show a contract between the parties whereby defendant was bound to move the car immediately upon notice, but merely a usage to that effect, adopted by the inferior employees of both parties for their mutual convenience, not known to either principal, or to any of their officers clothed with authority to make a contract. Upon these allegations and upon such proof, it was held that a bill which grounds the right to recover upon the breach of a contract cannot be sustained by proof of usage or custom, instead of a contract, so that proof of the usage was insufficient to support the allegations of the bill. (*Post, pp.* 61, 62, 65-70.)

7. **COMMON CARRIERS. Liability does not commence while something remains to be done by the shipper, nor until the goods are ready for shipment.**

A common carrier's risk begins on delivery and acceptance of the goods by it; and if something remains to be done by the shipper after the goods are put into the hands of the agent of the carrier, before they are to be transported, the carrier does not become liable as carrier until the goods are ready for shipment. (*Post, pp.* 67-69.)

Cases cited and approved: Watson v. Railroad, 9 Heisk., 255; Stewart v. Gracy, 93 Tenn., 315; Wells v. Railroad, 51 N. C., 47; Basnight v. Railroad, 111 N. C., 592; O'Neill v. Railroad, 60 N. Y., 138.

8. **SAME. Same. Carrier's liability does not begin before bill of lading is signed, where it has not taken possession of the goods, when.**

Where a car was loaded and standing at the shipper's ware-house on a siding constructed for its convenience, but the shipper had not, according to its practice, made out a tripli-cate bill of lading and presented it to the carrier's agent to be signed, though ample time had elapsed after the car was loaded and before the fire for the shipper to do so, there was no constructive delivery of the car to the carrier, so as to make it liable for the goods upon their destruction by fire. (*Post, pp.* 69-71.)

9. **SAME. Not liable for goods burned in the car by negligence of shipper's employee before taken possession by the carrier.**

Where a car loaded with freight was, when burned, standing on a siding near the shipper's warehouse, and the fire was started by a coal oil stove in the office of the shipper's ware-house being turned over by one of the shipper's employees, firing the warehouse, from which the flames spread to the car and destroyed its contents, the act of the shipper's employee, chargeable to the shipper, in starting the fire, was the prox-imate cause of the loss of the goods, which were still in the possession of the shipper, and not in the possession of the carrier; and, therefore, the carrier is not liable for the loss of the goods. (*Post, pp.* 71-73.)

Cases cited and approved: Lamont v. Railroad, 9 Heisk., 59, 60; State v. Ward, 9 Heisk., 105; Saunders v. Railroad, 99 Tenn., 135; Barr v. Railroad, 105 Tenn., 547; Railroad v. Nor-man, 108 Tenn., 331; Railroad v. Wilson, 108 Tenn., 618; Rail-road v. Haynes, 112 Tenn., 712; Railroad v. Kellogg, 94 U. S., 469; Insurance Co. v. Boon, 95 U. S., 130; Mill Co. v. Standard Oil Co., 63 Fed., 400, 11 C. C. A., 253; Edgar v. Railroad, 32 Utah, 330.

10. **SAME. Same. Carrier is not liable for loss caused by shipper's act.**

Even in cases where the relationship of common carrier exists, the common carrier is not liable for a loss caused by the

shipper's act, whether that act be one of negligence, misadventure, or misfortune.    (*Post, pp.* 71, 73.)

Cases cited and approved:   Railroad v. Law, 68 Ark., 218; Hart v. Railroad, 69 Iowa, 485; Coweta Co. v. Railroad, 4 Ga. App., 94.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

SMITHSON & ARMSTRONG and VERTREES & VERTREES, for complainant.

FRANK SLEMONS and CLAUDE WALLER, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The American Lead Pencil Company filed its original bill in the chancery court of Davidson county against the Nashville, Chattanooga & St. Louis Railway. This bill was based on the alleged breach of a contract, and the alleged loss to complainant of a car load of pencil and penholder material, the value of which is set out in the bill to be $2,900; but the proof shows the value of the contents of the car to have been $2,451.97.

This car load of material was destroyed by fire on Oc-

tober 24, 1904, while it was standing on a siding near the warehouse of complainant in the town of Lewisburg, Tenn. The car had been placed on the siding by defendant at complainant's request, in order that the material might be loaded into the car. The loading was finished on October 22, 1904, near the hour of noon.

Complainant's contention, averred in the bill, was that, whensoever complainant should apply for an empty car in which to ship his products, defendant was bound to furnish the car under the contract forthwith and as soon as it could be done, and that, upon receipt of notice from complainant that said car was loaded and ready for shipment, the defendant was bound forthwith to remove the car from the spur track, or siding, and start the same towards its destination promptly.

Complainant averred in its bill that, when the car load of material in controversy was loaded and ready to be moved from the siding, it (the complainant) gave to the defendant immediate notice thereof, but that the defendant failed to promptly move the car from the siding, and allowed several of its freight trains to pass and leave the car standing on the siding, and that this default on the part of defendant was the proximate cause of the loss of the car by fire.

The fire which consumed the car and its contents originated in the warehouse office of complainant, as the result of the accidental overturning of a coal oil heating stove. This stove was overturned by one of the employees of the complainant.

Pencil Co. v. Railroad.

The defendant answered the bill, and denied the existence of the contract sued on, and denied all of the material averments of the bill, and further set up, by way of defense, the statute of limitations of three years; but this defense of the statute of limitations was abandoned on the filing of an amended and supplemental bill by the complainant showing matter in avoidance of the statute.

Proof was taken on both sides, and on final hearing the chancellor dismissed the bill, and made a memorandum of his opinion a part of the record in the cause.

The complainant appealed to this court.

After a very careful review of all the evidence in this cause, we are unable to reach the conclusion that any contract of like tenor and effect to that averred in the bill was ever in existence between these parties. No one of the witnesses who testified in the cause had ever seen such a contract, or had any knowledge of its existence. A usage, or course of dealing, of like character to that which the bill avers was required by the contract, undoubtedly did exist between the parties, as shown by the proof, and there was much evidence that this usage was a custom between the parties, and this usage seems now to be relied on by the complainant as constituting the contract set out in the bill.

We cannot bring ourselves to the conclusion that a bill, which bases the complainant's right to recover upon the breach of a contract, can be sustained by proof of a usage, and no proof of a contract, or by proof of a

custom, and no proof of a contract. A contract is created by act of the parties. It may be either expressed or implied. It may be either written or oral. It must result from a meeting of the minds of the parties in mutual assent to its terms. It must be founded on a sufficient consideration. It must be mutual, free from fraud or undue influence, not against public policy, and sufficiently definite. See Cyc., vol. 9, 241, 242, and note 1, p. 141.

Usage and custom, on the other hand, in legal contemplation, differ radically in many respects from a contract. Usage is a repetition of acts, and is distinguished from custom in that usage is a fact, while custom is a law. There may be usage without custom, but there can be no custom without usage to accompany or precede it. Usage consists in the repetition of acts, and custom arises out of this repetition. Esriche Dict. Jurisprudence, quoted in *Cutter* v. *Waddingham*, 22 Mo., 206-248, and cited in Cyc., vol. 12, p. 1030, note 1.

Usage, then, as we have seen above, is the germ, which, by constant repetition, and general use, and great antiquity, develops into custom; and custom, when fully developed, is a law. The distinction thus drawn between contract and usage or custom is quite apparent. Where a contract between parties is shown to have existed, and is indistinct or ambiguous, or uncertain in its terms, usage or custom on the particular point will be accepted, like the general law, not in contradiction of the stipulations of the contract, but in explanation

of what is indistinct in it, and as furnishing the rule where it is silent. See *Charles* v. *Carter,* 96 Tenn., 614, 36 S. W., 396. Usage ought never to be allowed to vary or contradict the written instrument, either expressly or by implication. See *Bedford* v. *Flowers,* 11 Humph., 242. But usage cannot make a contract where there is no contract, nor prevent the effect of the settled rules of law. See *Charles* v. *Carter,* 96 Tenn., 614, 36 S. W., 396.

It follows from the foregoing that to permit the complainant to maintain its bill based upon the breach of a contract, by proof of the breach of a usage, is to permit complainant to profit by a variance between its bill and its proof. The proof does not connect the defendant with the loss, if the contract was in fact nonexistent, and if there was no contract there was no breach, and so, on the proof, the defendant would stand wholly disconnected from the loss of the property.

It is a fundamental principle that the proof must correspond with the allegations in the pleadings. *East Tenn., etc., R. Co.* v. *Collins,* 85 Tenn., 227, 1 S. W., 883; *East Tenn. Coal Co.* v. *Daniel,* 100 Tenn., 65, 42 S. W., 1062; *East Tenn., etc., R. Co.* v. *Lindamood,* 111 Tenn., 457, 78 S. W., 99; *Foster* v. *Jackson,* 8 Baxt., 434.

In the last-named case, the court said:

"While technical forms in pleadings are not now required, still the parties should be confined to the case made in the pleadings; the proof should correspond

124 Tenn.—5

with the allegations; the parties ought not to be allowed to charge one case in their pleadings and prove a case substantially different; and we think a charge that an attorney collected the money on a debt due his client and failed to pay it over is substantially different from proof that he did not collect the money, but might have done so with due diligence."

Now, reverting to the case at bar, we think there is quite a substantial difference between the averment in the bill of a loss occasioned by breach of a contract, and proof of a loss not occurring as a breach of contract at all, but of a loss occurring, as the complainant claims under its proof, by breach of a usage, which is a wholly different and distinct thing in its legal essence from a contract. We do not mean to be understood in this opinion as saying that circumstances might not arise where the courts would hold parties to a usage or to a custom—to have created by their course of dealing an implied contract; but under the facts of this case it is clear that there was no contract between the parties to this suit, either express or implied.

The parties to this suit are respectively corporations— one a manufacturing corporation, and the other a railroad corporation. It is not shown by the evidence in this record that the usage, shown to have existed by the proof, was ever brought to the attention of any officer of either of these corporations clothed with authority to make a contract, such as is set out in the bill. The usage in this case, adopted by the inferior employees of these

corporations for the convenience and mutual accommodation of the employees in handling shipments, cannot be held to have the force and effect and dignity in law of a solemn contract, either express or implied, between these corporations.

It follows from these views that there was a fatal variance between the averments of the complainant's bill and its proof, on account of which variance there could be no recovery by the complainant in the court below.

There is another view of the case, however, upon which we are equally clear that the complainant was not entitled to a recovery on the proof in this cause, leaving out of view altogether the question of contract.

The risk of a common carrier begins on delivery and acceptance of the goods. Chitty, Con., 73-78; *Mathew Watson* v. *Memphis & Charleston Ry. Co.*, 9 Heisk., 255; *Stewart, Ralph & Co.* v. *Gracy & Bro.*, 9 Pick., 315, 27 S. W., 664.

If something remains to be done by the shipper after the goods are put into the hands of the agent of the carrier before they are to be transported, the carrier does not become liable as carrier until the goods are ready for shipment.

See Cyc., vol. 6, p. 414, and authorities cited in note 60; *Basnight* v. *Atlanta & N. C. R. R. Co.*, 111 N. C., 592, 16 S. E., 323; 2 Am. & Eng. Ency. of Law, 808; *O'Neill* v. *Railroad Co.*, 60 N. Y., 138; *Wells* v. *Railroad Co.*, 51 N. C., 47, 72 Am. Dec., 556.

Was the delivery to the defendant as a common carrier ever completed?

Under the proof in the cause, it appears that the warehouse of complainant was located about four hundred feet from the main line of the defendant, and for the convenience of complainant in 1896 a spur track was built by the defendant from the main line to the warehouse, and alongside of the same, so that defendant could switch cars alongside the warehouse, thereby enabling complainant to make convenient loading of the car. When complainant had sufficient material to load a car, it would notify defendant's agent by telephone or in writing, and a car would be delivered alongside the warehouse and there loaded by complainant, who would then notify defendant's agent that the car was ready to be pulled out, and after that, at convenient time before the car would leave Lewisburg, complainant would make out a bill of lading in writing in triplicate, and take it to the depot and have it signed. This signing of the bill of lading was usually done after the car was pulled out on the main line, and always before the car left Lewisburg; the defendant insisting on this, and refusing to pull the car out of Lewisburg until the bill of lading was signed. The complainant had scales and weighed each car, and these weights were required to be inserted in the bill of lading. No bill of lading was ever made out by the complainant for the car in controversy in this suit. There was ample time on Saturday, the 22d, after the car was loaded, there was ample time

on Sunday, the 23d, there was ample time on Monday, the 24th, before the car burned, for the complainant to have made out this bill of lading, and to have had it signed by the agent of the defendant; but this was not done, and it is admitted by the manager of the complainant, in charge at the time of the fire, that it was not done. He also admits that the defendant company always refused to move a car from Lewisburg until the bill of lading had been signed; but he claims that the defendant should have moved the car out onto the main line on Saturday or Monday, and complainant's contention is that, if this had been done, the car would not have been destroyed by the fire which consumed complainant's warehouse.

It will be noted that two things remained to be done in order to complete the relationship of shipper and carrier as to the car in controversy. One of these things was to be done by the shipper; that is, the preparation and presentation for signature of the bill of lading. This was never done by it. One thing also remained to be done by the carrier to complete the relation, to wit, the taking of the car into possession. This could have been done by the carrier in two ways, if it had signed the bill of lading, which act would have amounted to constructive possession, inasmuch as the material was already loaded into the car, and the car was standing on the siding accessible to the main track. Or, if the carrier had taken actual possession of the car by pulling it out onto the main track, this would be taking of posses-

sion by the carrier; but inasmuch as one thing remained to be done by the shipper, and one thing remained to be done by the carrier, in order to complete the relation of carrier and shipper, the conclusion appears that this relationship did not exist between the parties to this suit as to the car in controversy. Until these two things were done, necessary to create the relationship, the possession of the material in the car and the possession of the car was with the complainant. It was at his warehouse on a siding constructed for his convenience, and most assuredly not in possession of the carrier until the carrier did either one of the two things necessary, as above shown, to transfer the possession or charge it with the possession of the car under the law.

Manifestly, on these facts, the complainant could not base a claim against the defendant under the common carrier liability as an insurer of the goods. The controversy then narrows to this point. The complainant insists that the defendant caused the loss by not moving the car promptly when notified. The defendant answers that it was under no contract obligation to move the car, either express or implied, and that the suit is on contract. The complainant then says that, under the usage, "you are bound to move it promptly." The defendant replies: "You did not sue on the usage. Violation of the usage is not the basis of your suit."

On each of these contentions it seems to us that the defendant has the best of the argument, and when the point is reached where we can say on this evidence that

the relation of carrier and shipper did not exist between complainant and defendant as to this car, the complainant is deprived of the benefit of all the authorities on which it bases its contention as to liability of the defendant; for it is believed that no one of the authorities upon which it relies was based on a state of facts where the relationship of common carrier and shipper did not exist. Assuming, then, that this relationship did not exist, how does the case stand as to the proximate cause of the loss? The proof is without controversy on this point. One of the complainant's employees overturned a coal oil heating stove in the office of complainant's warehouse. Fire from the stove ignited the oil. The flames enveloped the complainant's warehouse, from which they caught and ultimately destroyed the car load of material in controversy in this suit.

At the time of the fire, as we have seen, the car was in the possession of the plaintiff, and not in the possession of the defendant. The loss occurred before the relationship of carrier and shipper existed. The loss is traceable directly to the act of one of the complainant's employees, and the complainant's act is therefore the act which wrought the destruction of its property. Its act was the proximate cause of the injury. *State of Tenn.* v. *Ward & Briggs,* 9 Heisk., 105; *Lamont & Co.* v. *N. C. & St. L. Ry. Co.,* 9 Heisk., 60; *Edgar* v. *Rio Grande & W. Ry. Co.,* 32 Utah, 330, 90 Pac., 745, 11 L. R. A. (N. S.), 738, 125 Am. St. Rep., 867; Cooley on Torts (2d Ed.), 73-76; *Aetna Fire Ins. Co.* v. *Boon,* 95 U. S., 130,

24 L. Ed., 398; *Milwaukee & St. P. R. R. Co.* v. *Kellogg,* 94 U. S., 469, 24 L. Ed., 256; *Goodlander Mill Co.* v. *Standard Oil Co.,* 63 Fed., 400, 11 C. C. A., 253, 27 L. R. A., 587; *Railroad Co.* v. *Haynes,* 112 Tenn., 712, 81 S. W., 374; *Memphis St. Ry. Co.* v. *Wilson,* 108 Tenn., 618, 69 S. W., 265; *Nashville St. Ry. Co.* v. *Norman,* 108 Tenn., 331, 67 S. W., 479; *Saunders* v. *Railroad Co.,* 99 Tenn., 135, 41 S. W., 1031; *Barr* v. *Railway Co.,* 105 Tenn., 547, 58 S. W., 849.

In the case of *Lamont & Co.* v. *N. C. & St. L. Ry. Co.,* 9 Heisk., 59, this court said:

"None of the cases cited in support of this conclusion go to the extent of holding that the delay to ship or start goods to their destination within a reasonable time, after left for transportation, will amount to such neglect as of itself to make the carrier liable for the loss occasioned proximately by the act of God.

"On the contrary, all the cases cited are cases in which the assumed negligence, or want of due diligence and care, occurred at the time of the loss, and while the goods were *in transitu.*"

If mere delay to ship or start goods to their destination within a reasonable time after they are left for transportation does not amount to such neglect as will make the carrier liable for the loss of goods occasioned proximately by the act of God, it is difficult to see how we could hold that mere delay on the part of this defendant company to remove this car as promptly as it might have done, when the car was not in its possession, not *in*

*transitu,* not covered by a bill of lading, and when the complainant had not surrendered possession of it, will amount to an act of negligence by defendant which we can say was the proximate cause of the loss of the car by the fire.

Even in cases where the relationship of common carrier does exist, the common carrier is not liable where the loss is caused by the shipper's act, whether that act be one of negligence, or misadventure, or misfortune.

See Hutchinson on Carriers (1st Ed.), sections 265-328; Elliott on Railroads, sec. 1454; *St. Louis, I. M. & S. Ry.* v. *Law,* 68 Ark., 218, 57 S. W., 258; *Hart* v. *Chicago & N. W. Ry. Co.,* 69 Iowa, 485, 29 N. W., 597; *Coweta County* v. *Central of Ga. Ry. Co.,* 4 Ga. App., 94, 60 S. E., 1018; Cyc., Vol. 6, p. 379; Thompson on Neg., vol. 5, sec. 6464.

The decree of the chancellor will be affirmed, with costs.