BROOKS *v.* PAPER CO.

(*Jackson.* April 25, 1895.)

1. SUPREME COURT. *Will not reverse upon the facts, when.*

If there is sufficient evidence in the record to sustain a general verdict upon a correct charge, this Court will not reverse a non-jury law cause because the special findings of facts made by the trial Judge, without request of either party, are erroneous and insufficient to support the judgment rendered thereon. (*Post, p. 705.*)

2. SALES OF PERSONALTY. *Complete, when.*

The sale of goods is complete and title passes, subject alone to stoppage *in transitu* and avoidance for fraud, upon their unconditional delivery to a common carrier for shipment to the purchaser. (*Post, pp. 705–710.*)

Cases cited and approved: Boyd *v.* Mosely, 2 Swan, 661; Mississippi Mills *v.* Bank, 9 Lea, 314; Ochs *v.* Price, 6 Heis., 483; Harding *v.* Metz, 1 Tenn. Ch., 610.

Cited and distinguished: Belding Bros. *v.* Frankland, 8 Lea, 67.

3. SAME. *Purchaser's insolvency.*

The purchaser's insolvency, occurring after the completion of the contract of sale and delivery of the goods to the carrier for shipment to him, but before their actual receipt by him, does not, in the absence of fraud, defeat his title. (*Post, p. 710.*)

4. SAME. *Unconditional, when.*

The title of goods vests in the purchaser upon completion of the sale without payment of the purchase price, unless payment of the price is made a condition precedent to the vesting of title by express contract or necessary inference. (*Post, pp. 710–712.*)

Brooks *v.* Paper Co.

Cases cited: Harding *v.* Metz, 1 Tenn. Ch., 610: McClure *v.* Williams, 5 Sneed, 716.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

R. M. HEATH and HAYNES & HAYS for Brooks.

SMITH & TREZEVANT for Paper Company.

McALISTER, J. The object of this suit is to recover the value of certain wall paper sold by the Geo. H. Friend Paper Company, of Carrollton, Ohio, to the firm of Brooks & Cole, conducting business at Memphis, under the name and style of the "Tennessee Paper Company." The suit as originally commenced was in replevin, but the officer failing to get possession of the goods, the case has been prosecuted in detinue. Code, § 4119. The Circuit Judge, sitting without the intervention of a jury, found the issues in favor of the plaintiff, and pronounced judgment in its favor for $374.15. The defendant, Brooks, appealed, and has assigned errors.

The main controversy presented in the record is whether the title to the goods had passed to the

purchasers, Brooks & Cole, so as to be embraced in an assignment made by this firm to L. S. Brooks, trustee. The Geo. H. Friend Paper Company had frequently sold goods to Brooks & Cole, and when the latter firm made their assignment, January 31, 1893, they were indebted to the former not only for the goods in controversy, but likewise for several other purchases. The particular invoice of paper sued for in this case was ordered by letter January 14, 1893, in which terms of payment were not mentioned. The goods were shipped by the Geo. H. Friend Paper Company January 21, 1893. They reached Memphis Saturday, January 28, and remained in the railroad warehouse until Monday, the thirtieth, when they were delivered to Brooks & Cole. On the following day—to wit, January 31—Brooks & Cole made an assignment. This assignment had been contemplated for several days, and, in fact, the instrument had been prepared and was ready for execution on Saturday, January 28. It was actually signed and delivered, as already stated, on January 31.

This assignment, it is claimed, was brought about by the failure of the Harding Paper Company to permit Brooks & Cole to renew a note for $1,500 which they owed that company, and which would mature February 1, 1893. Mr. R. W. Brooks testified that, about ten days before the date of the assignment, a representative of the Harding Paper Company came to Memphis and "called upon me

in regard to the Harding Paper Company debt, and, I learned, was making investigation as to the financial standing of my firm, * * * and was endeavoring in every way possible to pry into my business. He announced his determination to remain in Memphis until maturity of his debt and collect the same. The Harding Paper Company had theretofore promised an extension of this paper. I thereupon wrote to this company and reminded them of their promise. If this note could have been extended, my firm would have been able to continue business, but not being able to make any arrangement with the Harding Company, or its agent, *. * * by direction of my firm our attorney prepared a special assignment on January 28, 1893, as a prudential measure, and dated it that day, * * * trusting the Harding Company would still agree to extend the note, but, being unable to procure an extension of the paper, or an interview with Mr. Harding, on the thirty-first of January the deed was acknowledged and filed for registration. It embraced 'all that portion of our property now contained in the certain three story brick building belonging to L. B. McFarland, No. 343 Second St., Memphis, Tenn.' Also our stock of goods, wares, and merchandise now in said above mentioned and before described three story brick building * * * consisting of wrapping paper,'' etc.

The assignment was special and preferential. The debt sued for in this action is not mentioned, al-

though six other debts due plaintiff, amounting to $1,130.86, are specified but not included in the preferred class.

It should be stated that, on February 27, 1893, plaintiffs, by their attorneys, made demand, in writing, for the goods of the trustee, L. J. Brooks. The letter concluded, viz.: "Our clients look to you either for the goods or their value." The trustee, however, continued to sell off the stock until March, 13, 1893,. when the writ of replevin was sued out. The sheriff was unable to find the goods and so returned the writ. The plaintiff thereupon elected to prosecute the case in detinue.

The plaintiff in error bases his assignments of error upon the special findings of the trial Judge. There was no request for the Circuit Judge to reduce his findings to writing, and, under the well-established practice of this Court, such findings are equivalent to a general verdict upon a correct charge, and, if there is any evidence upon which such general verdict might have been based, it will not be disturbed. If, therefore, the Circuit Judge was in error upon all his findings, or if his findings were all correct, but wholly immaterial, if there was still any theory supported by material evidence upon which a general verdict might be based, it would be in conformity with the well-recognized practice to affirm it.

The Circuit Judge, in his written opinion, states, viz.: "On January 28, 1893, 119 reams of this

45—10 P

order arrived in the city by rail, and were delivered on January 30. The next day, January 31, at 1:15, the firm had executed the trust and put it of record. R. W. Brooks at that time left out the amount of this last order to plaintiff, although he specifies six other purchases made of this plaintiff and the amount of each, amounting in all to $1,130.80. I am satisfied," says the Court, "that R. W. Brooks left this claim out because he did not consider that he owed it. At that time the firm did not authorize the payment of this claim, so I must conclude that it was not intended to be paid for by the trustee." * * * The Court also found that the sale was not completed until the goods were received by Brooks & Cole.

We think the Circuit Judge was in error in concluding that, because the debt due the Friend Paper Company was not secured by the special assignment of Brooks & Cole to L. J. Brooks, trustee, or named therein, therefore, Brooks & Cole did not consider that they owed it, and did not recognize the goods as their property. The Circuit Judge, in this finding, overlooked the fact that this assignment was special, and did not purport to embrace the entire indebtedness of this firm, or to include all of its assets. No inference prejudicial to their title is to be drawn from such omission. This case is not controlled by the principle settled in *Belding* v. *Frankland*, 8 Lea. That was a general assignment, in which the assignors conveyed all their property

of every description for the benefit of all their creditors. The assignors, Levison & Bro., were utterly insolvent at the time of their purchase of the goods from Belding Bros. & Co., and must have known the fact, their assignment being made only three days after the shipment of the goods. They did not include the goods in their assignment to the defendant, nor mention the plaintiffs in their schedule of liabilities; and, as soon as they learned that the goods had been received by the trustee after the assignment, they desired him to ship them back to plaintiffs. The facts presented in this case are entirely dissimilar.

It does not appear that Brooks & Cole were insolvent at the time the goods were ordered, and the firm intended in good faith to pay for them; nor does it appear that this firm was insolvent on January 21, when the goods were shipped. The sale was complete, and the title to the goods vested in Brooks & Cole the moment the goods were delivered to the carrier for shipment, subject alone to avoidance for fraud and stoppage *in transitu*. *Boyd* v. *Moseby*, 2 Swan, 661; 6 Heis., 483; *Mississippi Mills* v. *Bank*, 9 Lea, 314. The fact that the purchasers, Brooks & Cole, made a special assignment the day after these goods were received did not affect their title or authorize the vendor to re claim the goods, no fraud being shown.

The case of *Pike* v. *Wieting*, 49 Barb., cited by counsel, does not support the contention of ap-

pellee.    The  syllabus  of  that  case  is,  viz.:  "A.
liquor  merchant  in  Syracuse,  in  former  good  stand-
ing  with  the  plaintiffs'  firm  in  New  York,  gave  a
verbal  order  to  the  plaintiffs  for  a  bill  of  goods
on  credit,  which  were  sent  to  him  by  railroad,  and
left  in  a  storehouse  at  Syracuse.    The  merchant
was  in  fact  insolvent,  and  became  fully  aware  of
it  before  he  paid  the  freight  and  took  the  goods
into  custody.    Held,  that  the  Judge  properly  in-
structed  the  jury  that  it  would  be  a  fraud  upon
the  plaintiffs  sufficient  to  avoid  the  sale  if  they  be-
lieved,  upon  the  evidence,  that  the  purchaser  received
the  goods  with  a  preconceived  design  not  to  pay
for  them,  although  he  had  no  such  design  when  he
gave  the  order.

This  case  is  cited  in  *Belding*  v.  *Frankland*,  8
Lea,  and  would  seem,  from  the  head  note,  to  be  a
direct  authority  for  the  contention  of  plaintiff—to  wit:
That,  although  Brooks  &  Cole  may  have  been  sol-
vent  when  they  ordered  the  goods,  if  they  became
insolvent  before  the  goods  were  received,  and,  not-
withstanding  knowledge  of  such  insolvency,  received
the  goods,  this  would  constitute  such  a  fraud  as
would  vitiate  the  sale  and  authorize  the  vendor  to
reclaim  the  goods.

When,  however,  we  look  to  the  body  of  that
opinion,  we  perceive  a  very  important  distinction,
and  that  is,  the  sale  being  verbal,  the  title  to  the
goods,  under  the  New  York  statute  of  frauds,  had
not  vested  in  the  purchaser.

The Court said: "The single question presented is whether, in an executory sale, void by the statute of frauds, the intervening insolvency of the purchaser and the preconceived intent not to pay for the goods, formed at the time they were received and accepted by the purchaser, avoids the sale upon the ground of fraud. * * * It was claimed on the trial by defendant's counsel that the contract was complete when the purchaser received the bill of goods. * * * But I think it is too plain for argument, that an acceptance cannot be based upon the receipt of the bill by the purchaser, for he is not to be concluded until he has an opportunity of examining the goods. The contract of purchase was not only executory, but remained invalid until the receipt and acceptance of the goods by the purchaser on July 2. Until then, it was open to either party to refuse to complete the sale. * * * In my opinion," says the Court, "a purchaser of goods under an executory contract of sale void until acceptance, is guilty of fraud, if, before he concludes the purchase, he becomes hopelessly insolvent, and afterwards takes a delivery of them with a design not to pay."

The soundness of this opinion we do not question, but it is wholly inapplicable to the case now being decided. We grant that if the title to the goods had not vested in Brooks & Cole before their insolvency, the property could be reclaimed, as held by the New York case.

There is in this case, however, no executory. contract of sale contingent upon the performance of any annexed conditions, nor void under our statute of frauds until an actual acceptance of the goods by the purchaser. Under the uniform holdings of this Court, this is a bargain and sale as contradistinguished from an executory agreement. By the delivery to the carrier the paper became vested in the purchaser, subject only to the seller's right of stoppage *in transitu* or avoidance for fraud. *Boyd* v. *Mosely*, 2 Swan, 661; *Mississippi Mills* v. *Bank*, 9 Lea, 314; *Harding* v. *Metz*, 1 Tenn. Ch., 610.

The fact that the purchaser became insolvent before the goods reached their destination, does not divest a title which vested, without fraud.

It is next insisted by counsel for appellee that the judgment below should be sustained, for the reason that the sale was impliedly for cash, and that neither the purchaser nor their assignee had any right to take possession without payment, and that this condition precedent was not waived by the vendor in permitting the purchasers to take possession without a compliance with this condition. This contention is based mainly upon the authority of *Harding* v. *Metz*, 1 Tenn. Ch., 610. In that case it appeared that Harding sold to Steifel & Pfeiffer 1,000 bushels of barley, "to be paid for on delivery." About the time all the barley had been delivered Steifel & Pfeiffer became embarrassed, and

made an assignment of all their property to Metz, trustee, for the benefit of all their creditors.

The question raised in that case was whether the title to the barley passed by the delivery to Steifel & Pfeiffer or remained in Harding because of the failure to pay the price. The Court said: "If parties agree upon the terms of sale of personalty and annex no condition to the contract, the property passes to the buyer without delivery or tender of price. * * * But the parties may annex a condition which will prevent the vesting of title to the property, although actually delivered, until the condition is performed. Thus the sale may be on condition that the title remain in the seller until the price is paid, and in such case, until payment, the seller may follow the property even into the hands of a purchaser for value and without notice. The usual condition annexed to contracts of sale is, as in the present instance, the payment of the price. If this condition be not express, even if the sale be for cash, it would ordinarily be waived by a delivery of the property to the vendee without more. But," continues the Court, "if the condition be express that the goods are to be paid for on delivery, and they are delivered under the expectation that the condition will be immediately performed, and the seller comes with reasonable speed and demands performance, the English and American authorities are agreed that, if performance is refused, no property in the goods passes to the vendee, and the vendor

may maintain replevin for them in the hands of the vendee or a purchaser with notice, or any person such as an assignee under a general assignment for creditors who stand in the shoes of the assignor.''

It was held that case fell within the principle just announced. But the case at bar cannot be assimilated to that case. When the goods were ordered by Brooks & Cole and shipped by the Geo. H. Friend Co., there was no stipulation expressed that the goods were to be paid for in cash on delivery, as in the case of *Harding* v. *Metz*. Nor was there any such condition to be implied from their course of dealing, for it appears that it had previously been the custom of these firms to deal on credit, and, at the date of this purchase, Brooks & Cole were indebted to the paper company on account of six purchases already made and past due. It is very plain, therefore, that there is no room in this record for the application of the principle decided in *Harding* v. *Metz*. See, also, *McClure* v. *Williams*, 5 Sneed, 716.

Our conclusion is that plaintiffs are not entitled to recover. This may result in a hardship to plaintiffs, but we are unable to perceive any sound basis upon which a recovery in their favor can be rested.

Reversed, and judgment here in favor of L. J. Brooks.