CHARLES v. CARTER.

(*Jackson.* May 18, 1896.)

1. EVIDENCE. *Of custom inadmissible, when.*

Evidence of a custom by which the title to goods vests in the purchaser when placed on board the cars, although the bill of lading is payable to the consignor, and is not to be delivered to the purchaser until payment of the draft, is inadmissible to contravene the principle of law to the contrary. (*Post, pp. 613–616.*)

Cases cited and approved: Cooper *v.* Sanford, 4 Yer., 452; Turney *v.* Wilson, 7 Yer., 340; Brooks *v.* Paper Co., 94 Tenn., 710; Railroad *v.* Nelson, 1 Cold., 272; Wilson *v.* Knott, 3 Hum., 473; 10 Wall., 390.

2. SALE. *Delivery on board cars.*

The title to goods does not pass to the purchaser upon their delivery on board cars, where the seller consigns them to his own order at the place of final delivery; and they are at the latter's risk while in transit as to depreciation in value by reason of their perishable nature. (*Post, pp. 616–618.*)

3. SALES. *Vendee's right to refuse goods unless inspection is permitted.*

A purchaser of potatoes delivered by railway under an order for a choice, large, fresh, dry stock, may refuse to take them where they are consigned to the order of the seller, and the latter's agents refuse to permit the former to inspect them within a reasonable time after their arrival, in consequence of which no inspection is made. (*Post, pp. 617, 618.*)

4. PRINCIPAL AND AGENT. *Carrier and bank are agents of seller, when.*

The carrier and the bank are agents of the seller, when he consigns the goods to his own order, and attaches to the bill of

Charles *v.* Carter.

lading a draft upon the purchaser for the price. (*Post, pp. 617, 618.*)

FROM  SHELBY.

Appeal from Second Circuit Court of Shelby County.   J. S. GALLOWAY,  J.

EDGINGTON & EDGINGTON for Charles.

F.  J.  BYRNE  for  Carter.

MCALISTER, J: The defendant in error, M. E. Carter, recovered a verdict and judgment in the Circuit Court of Shelby County against the appellant, A. L. Charles, for the sum of two hundred and ninety-one dollars, damages for the breach of a contract. Charles appealed, and has assigned errors. The record shows that on the fifteenth of June, 1893, M. E. Carter & Co., wholesale produce merchants at Memphis, sold by telegraph to A. L. Charles, a merchant engaged in the produce business at Kansas City, Mo., one car load of Irish potatoes. Under the terms of the contract the potatoes were described as Choice Triumph, large, fresh, dry stock, and were to be delivered, *free on board the cars* at Memphis, at two dollars per barrel.

The contract was embodied in two brief telegrams,  viz.:

"MEMPHIS, TENN., June 14, 1893.

"One car Choice Triumph, to-morrow shipment, two dollars per barrel f. o. b. here.

"M. E. CARTER & Co."

Charles replied as follows:

"KANSAS CITY, Mo., June 15, 1893.

"Ship car immediately; your quotations; choice, large, fresh, dry stock.

"(Signed)          A. L. CHARLES."

Carter shipped the potatoes the same day by bill of lading, payable to his own order, with draft on Charles for the purchase price attached. These papers were forwarded to the National Bank of Commerce, of Kansas City, Mo., with directions to collect the draft and then turn over the bill of lading to the purchaser, Charles.

It further appears that on the same day the carload of potatoes were shipped, the purchaser, Charles, addressed the following letter to Carter, which was received about the time the potatoes reached Kansas City, viz.:

"KANSAS CITY, Mo., June 15, 1893.

"*M. E. Carter & Co., Memphis, Tenn.*

"GENTLEMEN—Your telegram received, and I telegraphed you to ship your car immediately. Your quotations; choice, large, fresh, dry stock. *You can draw, bill lading attached*, but want choice stock. No old, held goods, as they rot fast, even for the best of them. Yours truly,

"A. L. CHARLES."

The car of potatoes reached Kansas City on Saturday, June 17, when Charles, having been apprised of their arrival, made an effort to examine the stock, but having no bill of lading, the railroad company refused the right of inspection. At a later hour in the day the draft was presented for payment, but payment was refused by Charles upon the ground that he had no bill of lading and was not permitted to inspect the potatoes. The bank declined to surrender the bill of lading to Charles without the payment of the draft. Carter was immediately notified of the situation, and he thereupon telegraphed the bank to let Charles have the bill of lading. Carter also advised Charles of this instruction to the bank, but this communication did not reach Charles until Saturday evening after business hours.

It further appears that on Monday, June 19, Charles procured the bill of lading from the bank and made another effort to inspect the potatoes. The company again declined to permit an inspection, upon the ground, as stated by Charles, that the bill of lading, having been drawn to the order of the consignor, Carter, and not having been indorsed to Charles, the latter had no right of inspection. The agent of the company stated the ground of refusal as follows: "Charles called with the original bill of lading, but first made the statement that he had borrowed the bill of lading from the bank, and would not, therefore, leave it with us. As he would

not give us possession of said bill of lading, we declined to allow him to inspect contents of car,'' etc.

The agent also testified that some railroads allow inspection and some do not; that his road—the road over which these potatoes were shipped—did not allow inspection in cases where the bills of lading were made out to the consignor or his order. He further testified that in all cases where the bill of lading was made out to the consignee that the railroad would permit the inspection of the goods by the consignee,'' etc.

Charles states that he then returned the bill of lading to the bank, and declined to have any further connection with the matter. It appears that the bank then turned the potatoes over to a firm of commission merchants, who inspected them, and found them in a very unmerchantable condition. The net proceeds of sale by this firm amounted to $102.75, which was remitted to M. E. Carter. The contract price of the car load of potatoes was $380, and the measure of recovery claimed by Carter & Co. is the difference between the contract price and the amount realized from the sale.

The principal controversy arising upon the record is in respect of the title to the potatoes after their shipment from Memphis. The contention of counsel for Carter is that, under the terms of the contract, the delivery of the potatoes, free on board the cars at Memphis, immediately vested the title in the purchaser, and if the potatoes at that time were sound

and merchantable, and of the description purchased, the shipper would not be liable for any deterioration in the shipment subsequently occurring.    Counsel for plaintiff in error, while conceding the general rule, insists that Carter violated the contract by not consigning the potatoes by bill of lading directly to Charles, and that, by shipping them by bill of lading to the order of himself, the title still remained in the consignor until they might be inspected and received by the purchaser.    It is further insisted on behalf of Charles, the purchaser, that Carter, by consigning the potatoes to his own order, prevented any inspection or examination of the stock until they had decayed.    Defendant in error sought to avoid the effect of consigning the goods to his own order by undertaking to show that he had been authorized to do so by the purchaser, and, to that end, introduced the letter written by the purchaser after the contract had been consummated by telegram, and after the potatoes had been forwarded, in which the purchaser, Charles, stated, viz.:  "You can draw bill of lading attached."    Evidence was introduced by defendant in error, which the Court permitted to go to the jury, tending to show that the words, "you can draw bill of lading attached," in above letter, meant, according to commercial usage or custom long established, that the shipper was to have the bill of lading made out to his own order and indorsed by him, with a notation in it to notify the purchaser, and that a draft was to be attached for the price of the goods.

The Court also permitted testimony to the effect that when the goods were shipped "f. o. b. Memphis," the custom is that the title to the goods, after being put on board the cars at Memphis, were in the purchaser, and that they were at the purchaser's risk during the transit, *and that they were at the purchaser's risk, even though the bill of lading was made out to the consignor and had the draft attached,* which was sent to a third party for collection of draft before delivery of goods. It should be stated in this connection that one witness, introduced by defendant in error, denied the custom, and stated that the title to the goods in the case last supposed would remain in the consignor. Exceptions were interposed to all proof of custom as tending to overthrow the well-settled law on the subject.

With this preliminary statement we notice briefly some of the assignments of error. The first assignment is that the Court erred in permitting witnesses to testify concerning any custom or usage tending to prove that the title to the potatoes became vested in said Charles, the purchaser, when placed on board the cars at Memphis, and that, as such, they were at the risk of said Charles while in transit, from decay and all other causes, although bill of lading was payable to consignor and was not to be delivered to purchaser until payment of draft.

Second, the Court erred in permitting proof that it was the custom of merchants to make bill of lading to their own order with draft attached.

Third, the Court erred in overruling the exceptions made by counsel for plaintiff in error to all the various testimony concerning custom or usage.

We are of opinion that all testimony on the subject of custom or usage should have been excluded by the Court. "Proof of custom or usage known to both parties to a contract, either in fact or presumptively from its long continuance, notorious character, or otherwise—if it is not in conflict with the law or its policy—if it is reasonable and as to the place, business, or persons, uniform and universal, it will be accepted like the general law, not in contradiction of written stipulations, but as explaining what is indistinct in them, and furnishing the rule where they are silent." Bishop on Contracts, § 449. A custom or usage regulating dealings between certain merchants and their customers, contrary to or different from the law of the land, cannot be allowed. *Cooper* v. *Sanford*, 4 Yer., 452.

Again, it was held that a bill of lading, having a definite legal meaning, the liability of the carrier fixed by law cannot be changed by the custom of a particular place among a certain class of shippers. *Turney* v. *Wilson*, 7 Yer., 340.

Usage cannot make a contract where there is none, nor prevent the effect of the settled rules of law. *Barnard* v. *Kellogg*, 10 Wallace, 390; *Wilson* v. *Knott*, 3 Hum., 473. The law is well settled that, in the absence of a contract providing otherwise, the delivery of goods to a carrier for shipment vests

title immediately in the purchaser, subject to the seller's right of stoppage *in transitu* or avoidance for fraud. *Brooks* v. *Paper Co.*, 94 Tenn., 710. But where goods are shipped deliverable to the order of the consignor, for and on account of the consignee, the carrier cannot deliver them to such consignee except upon the production of the bill of lading properly indorsed by the consignor, for this is notice to the carrier that the shipper intends to retain in his power the ultimate disposition of the goods. Hutchinson on Carriers, § 130. "The fact," says the author in a note, "of making the bill of lading deliverable to the order of the shipper, is, when not rebutted by evidence to the contrary, decisive to show his intention to reserve the *jus disponendi*, and from preventing the property from passing to the vendee." See, also, to the same effect Benjamin on Sales, §§ 541–590; *East Tennessee & Georgia Railroad* v. *Nelson*, 1 Cold., 272.

We are of opinion that all the evidence admitted on the trial below on the subject of custom, so far as it contravened these well-settled principles of law, were wholly inadmissible.

The second assignment of error is that the Court charged the jury, viz.: "If you believe from the evidence that plaintiffs wired defendant the price per barrel of a car load of potatoes to be shipped to Kansas City, Mo., said potatoes to be of a certain grade and quality, and to be put upon the cars 'f. o. b. here'—that is, at Memphis, and that the

defendant wired back to plaintiff accepting the terms and conditions as set out in plaintiff's telegram; and that it was the universal custom and usage and understanding among merchants handling and selling such goods to have bill of lading made out to the order of the consignor, and attach draft for the proceeds of sale thereto, and that the parties in this instance contracted with reference to such custom, and that the plaintiff did so consign the goods to his own order, to be delivered to defendant upon payment of draft, under this universal custom and usage, and that the defendant, upon being notified of the arrival of the goods, bill of lading, and draft at Kansas City, refused to pay the draft and take the goods; and you further find that the potatoes were in grade and quality such as were ordered by defendant, when loaded upon the car at Memphis, and were merchantable and marketable when so loaded upon the car, then I charge you that plaintiff is entitled to recover of defendant the contract price of the goods so shipped.''

We think this instruction erroneous, for the reason that it is based largely upon the proof of custom, which we hold was in contravention of well-established rules of law, and should have been excluded from the jury.

The following instructions submitted by counsel for Charles, after the general charge was delivered, should have been given in charge to the jury, viz.:

''2. The Court further charges you that if you

find the fact to be that the plaintiff consigned these goods to his own order at Kansas City, then it follows that there was no delivery of the goods to the defendant, Charles, when they were put on board the cars at Memphis, and when the goods were in transit to Kansas City, Mo., they were the property of the plaintiff, and they were at his risk while in transit from all the casualties of the transit, including that of the loss and depreciation of the value of the property by reason of the perishable nature of the property itself.

"3. The Court further charges you that, if you find that these goods were shipped by plaintiff to his own order at Kansas City, Mo., the railroad over whose line the property was shipped was the agent of the plaintiffs, and not of the defendants.

"4. The Court also charges you that if you find the fact to be that plaintiff sent a draft for the amount of these goods to Kansas City, Mo., to a bank there, then said bank would be the agent of plaintiff, and its acts and doings in the premises would be the acts and doings of the plaintiff.

"5. The Court further charges you that, when these potatoes arrived at Kansas City, Mo., the defendant, Charles, had a legal right to a reasonable time to inspect the potatoes, to ascertain if they were in a good merchantable condition, and to see if they otherwise fulfilled the provisions of the contract of sale and purchase; and if they did not fulfill the contract of sale and purchase, and were not

in a good merchantable condition, then the said Charles had a right to reject the said potatoes and refuse to take them.

"6. If you find that the conduct of plaintiff and his agents at Kansas City was such, that they declined and refused to permit an inspection of the potatoes by the defendant within a reasonable time after their arrival in Kansas City, and an inspection thereof was, in consequence, not made, then it was no longer the duty of the defendant to take such potatoes, and you must find for the defendant.

"7. The Court further charges you that it becomes a question of fact for you to determine what would be a reasonable time for the defendant to inspect these potatoes, and, in determining what was a reasonable time, you will consider the perishable nature of the property itself, the length of time it had been barreled up and confined in a railroad car, as well as the season of the year and condition of the weather at the time."

The Court holds that the foregoing instructions embodied sound propositions of law applicable to the facts of the case, and should have been submitted to the jury. For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.