R. H. SINDLE and MRS. ALLEN SINDLE v. AMERICAN RAILWAY EXPRESS COMPANY.

Middle Section. July 31, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

J. Woodall Murrey, of Gallatin, for plaintiffs in error.
J. T. Baskerville, of Gallatin, for defendant in error.

FAW, P. J. On February 5, 1927, and for a number of years theretofore, R. H. Sindle and his wife Mrs. Allen Sindle were, as partners, engaged in the produce business at Gallatin, Tennessee, and, as a part of their regular business, they bought "furs," or pelts, of various kinds and in considerable quantities, during the winter season and sold them to buyers in the larger markets of the country. They brought this suit in the circuit court of Sumner county, on April 1, 1927, to recover damages for loss resulting to them from the alleged negligent handling by the defendant American Express Company of a shipment of furs from Gallatin, Tennessee, to S. Goodman & Sons, at Louisville, Kentucky.

At the close of the plaintiffs' evidence in chief, on the trial before a jury in the circuit court, the trial judge, on motion of defendant, directed the jury to return a verdict for the defendant, which was done, and the suit was dismissed at the cost of plaintiffs. A motion on behalf of plaintiffs for a new trial was overruled and plaintiffs appealed in error to this court and have assigned errors here.

The assignments of error present but one question which can be considered by this court, and that is, whether the trial court erred in peremptorily directing the jury to return a verdict for the defendant.

The declaration filed by the plaintiffs is as follows:

"The plaintiffs, R. H. Sindle and Mrs. Allen Sindle, of Gallatin, Tennessee, sue the defendant, American Railway Express Company, a corporation, for six hundred thirty-six dollars ($636) as damages by reason of the following facts, to-wit:

"The defendant, a foreign corporation doing business in Tennessee, under its charter and authority of law, as a common carrier engaged in interstate commerce, on the 5th day of February, 1927, received from plaintiffs at Gallatin, Tennessee, in a good and sound condition, a consignment of furs of various kinds, to be carried by the defendant company to plaintiffs' consignee, S. Goodman & Sons, at Louisville, Kentucky, and the plaintiffs, who are partners engaged in buying, selling and shipping furs and other articles of commerce, with their place of business at Gallatin, Tennessee, paid the defendant company a consideration for carrying the said furs from Gallatin, Tennessee, to Louisville, Kentucky, and the defendant company for the consideration of the said money paid to it by plaintiffs, promised and undertook to safely carry said goods to Louisville, Kentucky, and to deliver same to said consignee, S. Goodman & Sons, in as good and sound condition as they were when received by defendant company at Gallatin, Tennessee, but the defendant company wholly failed

to deliver the said goods to the said consignee, at Louisville, Kentucky, in a good and sound condition and the same were greatly injured and damaged by the defendant company or its agents while the same were in its possession as a carrier and the said injuries and damages to the said goods were due to the negligence and carelessness of the defendant company in carrying, hauling and handling the same and the negligence of the defendant company was the proximate cause of the damage and injury to the said furs, the amount of the said damage being $636.

"Plaintiffs therefore aver that they have a right of action against the defendant for the sum of $636 as above demanded as damages and they demand a jury to try their cause."

It is stated in the briefs of counsel for plaintiffs and defendant, respectively, that the defendant interposed a plea of not guilty to plaintiffs' declaration. We do not find in the record a plea of not guilty, or any other plea, on behalf of defendant; but the minutes of the trial court show that the jury was "duly elected, empaneled, tried and sworn the truth to speak upon the issues joined between the plaintiffs and the defendant."

"Where the case is tried on the theory that certain issues have formally been raised, it cannot be objected for the first time on appeal that such issues were not in fact joined by reason of the absence of an answer, plea or replication by which they should properly have been raised." 2 R. C. L., pp. 81-82, sec. 55, citing numerous cases in support of the above quoted text.

In 31 Cyc., pages 733-735, it is said: "Failure to file any pleading which is necessary to form an issue, including a complaint, answer, or reply, or otherwise failing to join issue properly or at all upon any or all of the allegations appearing in the pleadings, is deemed waived by voluntarily proceeding to trial as though issue was properly joined. Likewise where the parties have voluntarily tried the case as if certain matters were in issue, neither will be permitted afterwards to object that such matters were not properly put in issue by the pleadings. And failure to file. a similiter is waived under this rule by going to trial. So the want of a pleading is waived by submitting the case on an agreed statement of facts. When a party goes to trial without asking for a default and without objecting to the want of a plea or answer, the cause will be treated as though the general issue or general denial had been filed."

We will, therefore, assume that the averments of plaintiffs' declaration were put in issue by an appropriate plea of the general issue of not guilty on behalf of defendant.

It appears from the record entries of the circuit court that the defendant's motion for peremptory instructions was based upon two grounds, as follows:

(1) "Because there was no evidence after construing same in its most favorable light upon which to base a verdict in favor of the plaintiffs;"

(2) "Because the undisputed evidence showed that the shipment of furs alleged to have been damaged while in possession of the defendant had been sold by the plaintiffs to S. Goodman & Company, of Louisville, Kentucky, and had been delivered to the defendant, a common carrier, at Gallatin, Tennessee, consigned to the purchaser, S. Goodman & Company of Louisville, Kentucky, and that said shipment of furs was the property of S. Goodman & Company and plaintiffs could not maintain an action for alleged damages to said shipment of furs."

It further appears from the same entry that "the second count of said motion was by the court sustained, and upon said second count of said motion the court instructed the jury to find in favor of the defendant."

It further appears, from the bill of exceptions, that "the court sustained the motion of the defendant upon the grounds that the furs were sold to S. Goodman & Sons at Louisville, Kentucky, before they were delivered to the defendant Express Co., and that they were the property of S. Goodman & Sons and the court is of the opinion that the wrong party has sued in this case."

It appears from the proof admitted on the trial that, at 4:21 p. m. on Saturday, February 5, 1927, the plaintiffs sent to S. Goodman & Sons, fur dealers at Louisville, Kentucky, to whom they had previously been selling furs at times for four or five years, a telegram as follows:

"S Goodman and Son

"Louisville Ky

"377 Opossums No 1 143 Black Cats No 1 39 Shorts 52 Long Stripe 4 Cats 26 Coons No 1 8 Minks 8 No 1 1 No 2 25 Gray Fox 7 Red Fox 15 Rats 1 Weasel Wire best price at once as can ship on No 2.

"R. H. Sindle."

A few minutes later (at 5:05 p. m.) S. Goodman & Sons replied to plaintiffs by wire, as follows:

"Louisville Ky 505P Feb 5 1927

"R. H. Sindle

"Gallatin Tenn

"Can not name prices without seeing furs if you care to ship will figure top prices

"S. Goodman & Sons"

Upon the receipt of the telegram last quoted, the plaintiffs packed a large quantity of furs, or pelts, of various animals (as described and enumerated in their telegram to S. Goodman & Son) in 8 burlap sacks, sewed the sacks securely, "tagged" them to S. Goodman & Sons, Louisville, Kentucky, and had them hauled to the office of the defendant Express Company, which was in the depot building of the Louisville & Nashville Railroad Company at Gallatin. Defendants' son, R. H. Sindle, Jr., who hauled the furs to the defendant's office, found the office closed for the day when he reached there, but he found the defendant's local agent, Mr. Moore, on the street in Gallatin, and Moore directed Cecil Smith, an employee of defendant, to go to defendant's office and receive the shipment, which Smith did. Smith, the employee of defendant who received the shipment, executed and delivered to plaintiffs (through their said son) a receipt, written on the printed form used by defendant, for "8 Bags Furs," weight 381 pounds, and "declared value $1800," consigned to S. Goodman & Sons, Louisville, Kentucky.

Plaintiffs had communicated to Mr. Moore, defendant's agent, by telephone, before Moore left defendant's office on that afternoon, their desire to ship these furs to Louisville, Kentucky, and that they wished them to go forward on a train known as "No. 2," which, the record shows, was due to leave Gallatin about 8:30 p. m., and to reach Louisville, about one o'clock on the following morning (Sunday). Mr. Moore told plaintiffs, in substance, that if they would send the furs to his office, he would ship them on No. 2 as requested. The furs were not placed on No. 2, but remained in the defendant's office at Gallatin until about 8:30 o'clock on the following morning (Sunday), when they were forwarded on a passenger train passing Gallatin at that hour, and reached Louisville about one o'clock in the afternoon of the same day, and were delivered to S. Goodman & Sons, the consignee, on the following morning (Monday).

The proof shows that this was a "prompt delivery" of a shipment received by defendant company at Gallatin on Saturday afternoon, as there was no "Sunday delivery" of express shipments at Louisville.

However, plaintiff R. H. Sindle testified that S. Goodman & Sons had agreed with plaintiffs that they (S. Goodman & Sons) would take the furs out of the express office on Sunday, February 6, if they reached Louisville on that day. Mr. Sindle does not explain when or how this agreement was made, and it is neither corroborated nor denied by Mr. Goodman (of S. Goodman & Sons) whose deposition was read by plaintiffs on the trial; but, as Mr. Swindle's

testimony on this point is not inherently incredible, we must accept it for the purpose of the motion for a directed verdict.

The shipment was inspected by S. Goodman & Sons within thirty or forty minutes after it was delivered to them by defendant's agents on Monday morning, February 7th, and it was then discovered by them that the o'possum and skunk (polecat) pelts were in a "spoiled condition" and of practically no value. This fact was promptly communicated by S. Goodman & Sons to plaintiffs by telephone, and, pursuant to an understanding reached in that conversation, S. Goodman & Sons shipped the o'possum and skunk pelts back to plaintiffs but retained the remainder of the shipment. The express charges on the shipment from Gallatin to Louisville were paid by S. Goodman & Sons to defendant company upon receipt of the goods, but on their settlement with plaintiffs for the furs accepted by them, S. Goodman & Sons retained a sum sufficient to pay the express charges from Gallatin to Louisville on that part of the shipment returned to plaintiffs. In other words, the ·express charges for the transportation of the goods involved in this suit (from Gallatin to Louisville) were paid by S. Goodman & Sons for the account of plaintiffs and were ultimately paid by plaintiffs.

Plaintiffs used their best efforts to salvage the "spoiled" pelts returned to them by S. Goodman & Sons as aforesaid, but, after selling a small part of the returned furs for $82, which was the best price obtainable, they were unable to get anything for the remainder. The proof tends to show that the peltry contained in the shipment was in a sound and merchantable condition when it was delivered to the defendant Express Company by the plaintiffs on February 5th, and that the degeneration and deterioration in its physical condition between the time of its delivery by the plaintiffs to defendant on Saturday evening and its delivery by defendant to S. Goodman & Sons on the following Monday morning resulted in a substantial decrease in its value, the exact amount of which is not material to the decision of the questions now before us.

As we have seen, the learned trial judge was of the opinion that the title to the furs passed to S. Goodman & Sons upon their delivery by plaintiff to the defendant Express Company, a common carrier. · The plaintiffs testified unequivocally that the furs had been sold to S. Goodman & Sons at or before the time they were delivered to the defendant; but it is obvious that this was merely their understanding of the effect of the telegrams passing between them, which telegrams we have hereinbefore copied.

In the absence of evidence of a contrary intent, the general rule is that, upon the delivery of goods by the seller to a common carrier for transportation to the buyer, the title passes to the buyer, subject

only to the seller's right of stoppage in transitu or avoidance for fraud. Brooks v. Paper Co., 94 Tenn., 701, 710, 31 S. W. 160.

The rule just stated is in harmony with the Uniform Sales Act (Acts of 1919, Ch. 118), which provides (in sec. 46, subsec. 1) that, "where, in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to a carrier, whether named by the buyer or not, for the purpose of transmission to the buyer, is deemed to be a delivery of the goods to the buyer, except in the cases provided for in Section 19, Rule 5, or unless a-contrary intent appears."

The exception "provided for in Section 19, Rule 5," is as follows:

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

"The owner of goods shipped by a carrier is in all cases entitled to maintain an action of tort against the carrier for loss of, or injury to, the goods, although he is the party with whom the contract of shipment was made; and if the action against the carrier is in tort it should be brought by the owner of the goods, whether he is consignor, or consignee, or a third person." 10 Corpus Juris, p. 346, sec. 509.

Hence, "where title to the goods shipped remains in the consignor he is of course entitled to sue for loss of, or injury thereto, since he is the person who has sustained the loss or injury." Idem, p. 347, sec. 510.

"In this country one line of cases holds that, since the shipper or consignor has parted with all interest in the property, he cannot be injured by the failure of the common carrier to perform its duty, or to keep its contract, and the consignee or owner alone can maintain the action. Another line of cases holds that, inasmuch as the contract for shipment was made by the shipper or consignor, he has the right to maintain such action, because the carrier agreed with him to carry the goods safely, and within a reasonable time, and the action is for the breach of that agreement, the question in whom property in the goods resides being regarded as immaterial." 4 R. C. L., p. 943, sec. 399.

The early Tennessee case of Carter v. Graves, 9 Yerg. 446, falls within the second of the two lines of cases pointed out in the excerpt just quoted from Ruling Case Law. (See N. C. & St. L. Railway v. Southern Nursery Co., 3 Tenn. App. R. 148, 151).

In 4 R. C. L., at pages 944-945, under the head of "True Doctrine as to Proper Party Plaintiff," it is said:

"A study of the circumstances under which a right of action is given to the consignee and consignor will lead to at least one conclusion, namely, that where the consignor has sued, the courts seem generally to have held that he was a proper party and could maintain his action, and where the consignee has sued, they also seem to have generally sustained him. Hence, the apparent confusion in the courts as to just who is the proper party plaintiff. However, be it said, the real conflicts are not numerous, and many of the apparent differences of judicial opinion and most of the confusion springing therefrom are the result of fallacious and illogical reasoning, due largely to the fact that in such cases the courts have treated the question from the standpoint of the relation existing between the shipper and consignee in reference to the ownership and right of possession of the property, instead of considering the true question of the relation the carrier sustains to each of these parties respectively, an element heretofore considered. Any difference or diversity of interest that may arise between the consignor and consignee can in no respect concern the carrier so long as it is protected against responding for the property more than once. The ownership may be general and unqualified, or special and limited; the right of possession may be absolute or contingent; or there may be a special contract for the transportation of the goods; in any one of these instances the interest would be sufficient on which to found an action in the absence of the assertion of a superior right in another. The true premise on which to base any inquiry as to the proper party plaintiff is, therefore, that both the consignor and the consignee may have an interest in the goods or their safe transportation in which event either may sue; but the success of the demand and claim of one apparently entitled to possession as against the carrier will relieve the carrier from further responsibility even to one having a better right. Furthermore, under statutes existing in many jurisdictions if there is any question or doubt as to the party to whom the carrier is liable, all necessary parties may be brought in and required to set up their interests, and thereby determine the respective rights and effectually protect the defendant from the possibility of the assertion of further claim by other parties."

And on page 940 of the same volume it is said:

"While the purchaser of a chattel, being dissatisfied with it, reships it to the seller, and, afterwards, the chattel not having come to the latter's hands, pays him for it, it has been held that the purchaser has a right of action against the carrier for

its loss since under the circumstances of the case, when he pays for the property he becomes the owner thereof, and of the alleged cause of action for its loss;'' citing Ralph · v. Chicago & N. W. Railway Co., 32 Wis. 177, 14 Am. Rep., 725.

It has been held that the consignor may sue for loss of or injury to goods shipped by a common carrier, on the theory that he is the person who has suffered the loss or injury, in cases ''where the contract of sale of the goods shipped is rescinded by agreement of the parties; where the consignee refuses to receive the goods; . . . where goods are shipped to a customer to be tested by him, and purchased if satisfactory; where shipment is made to the consignee who has not agreed to accept the same unless the goods are up to a certain grade; (or) where a contract of sale allows a purchaser and consignee to refuse the goods, if not in good condition on arrival.'' 10 Corpus Juris, pp. 347- 348, sec. 510.

In the case of Savannah, F. & W. Railway Co. v. Commercial Guano Co. (Supreme Court of Georgia), 30 S. E. 555, which was a suit by the consignor against the carrier for injury to a shipment of commercial fertilizer, the question was made, as in the case at bar, that the consignor could not maintain the suit because the title to the goods had passed to the purchaser (the consignee) when the goods were delivered to the carrier. In the opinion in that case the court said:

''It is true that, when a person residing in one place orders goods shipped to him from another place by a railroad company, a delivery of goods by the vendor to the company is, in law, a delivery to the purchaser. If the contract were that the vendor should deliver the goods where the purchaser did business, a delivery to the carrier would not be a delivery to the purchaser. The only concern, however, which the carrier has touching these relative duties and rights of a vendor and vendee is to be protected in the event of a suit by one against any subsequent liability to the other for the same cause of action. In the event of liability by the carrier, the only question which remains for determination is whether or not the plaintiff who sues has been damaged, and, if so, to what extent. If the seller had completely complied with his contract with the purchaser by a delivery of goods to the carrier, and they afterwards became damaged while in the hands of the carrier, it was certainly · in the power of the consignor and consignee, by mutual consent, to rescind the contract of sale; and it does not lie in the mouth of the carrier to complain of such rescission, when it was brought about by its own wrong. The freight in this case having been thrown back upon the hands of the consignor, and

it consequently having sustained whatever loss there was, there can be no question about its right to sue."

In the instant case, it appears from the undisputed proof that S. Goodman & Sons declined to accept the o'possum and skunk pelts because they were in a "spoiled condition," and of no substantial commercial value, and that thereupon by mutual agreement of the plaintiffs (the seller and consignor) and S. Goodman & Sons (the purchaser and consignee), the sale (of the o'possum and skunk pelts) was rescinded, and they were immediately returned to and accepted by the plaintiffs.

Notwithstanding the rule that title to goods consigned to the purchaser passes upon delivery to the carrier, the purchaser has nevertheless the right to inspect the goods on arrival at the place of destination and to reject them if they do not correspond with the contract. The right of inspection does not postpone the passing of the title. "It simply authorizes a rescission of the sale in the event the goods are not as contracted for." Wind v. Iler & Co. (Iowa), 27 L. R. A. 219, 220; Annotation, 27 A. L. R. 524; Charles v. Carter, 96 Tenn., 607, 618, 36 S. W., 396; Model Mill v. Railway Co., 136 Tenn., 211, 219, 188 S. W. 936.

"It has been held that, in a suit by the consignor against the carrier to recover the loss caused by damage to the goods shipped, where no exception has been filed in limine to the right of such consignor to sue, and where the consignee appears and testifies for plaintiff on the merits, the defense by the carrier that the consignor, not being the owner of the goods, has no cause of action, cannot avail it, since the only object of the carrier in seeking to have the proper plaintiff is to avoid double payment for the damage claimed; and the action of the consignee in testifying for plaintiff consignor is tantamount to an acquiescence by the consignee, and he is thereby estopped from recovering on the same cause of action." 10 Corpus Juris, p. 348, sec. 510.

And so in the instant case, A. S. Goodman, a partner in the firm of S. Goodman & Sons, testified as a witness for the plaintiffs, and his testimony is of a character that would conclusively estop S. Goodman & Sons, the consignee of the shipment in question, from maintaining a suit to recover damages for injuries to the shipment, and (paraphrasing a statement of the court in the Wisconsin case of Ralph v. Railway Co., supra), if the plaintiffs cannot recover in this action, then no one can recover for the alleged injuries to the shipment of furs in question, even though it be shown that such injuries proximately resulted from the negligence of the defendant Express Company. We are of the opinion that the learned trial

judge erred in his ruling that "the wrong party has sued in this case," and in directing the jury to return a verdict for defendant on that ground.

As before stated, it appears that two distinct and independent contentions were advanced on behalf of defendant in support of its motion for a directed verdict, and that the trial court impliedly overruled the first of the two contentions and expressly sustained the second. The question here is, whether the trial judge erred in directing the jury to return a verdict for the defendant.

It is insisted by the learned counsel for defendant that there was no evidence before the jury upon which a verdict for the plaintiffs could have been based. We think this contention fails to recognize the burden which the law places on the carrier to show that injury to the goods occurred without its fault.

The "furs" in question were "green" pelts—the undressed skins of fur-bearing animals which had been killed very recently before the pelts were delivered to the defendant—and may properly be classified as "perishable" goods. The proof shows that exposure to heat will readily produce decomposition and decay in such peltry. A common carrier is not liable for loss or damage arising from the nature and inherent character of perishable commodities, —where they succumb to the forces of natural decay, but the carrier is bound to take reasonable care of such goods so that its acts or neglect may not hasten the processes of decay. 4 R. C. L., pp. 728-729, sections 200-201.

But "when goods are damaged in the hands of the carrier a presumption arises that the damage was due to its negligence, and the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage. Accordingly the mere proof of delivery of the goods to the carrier in good order, and of their arrival at the place of destination in bad order, makes out a prima-facie case against the carrier, so that if no explanation is given as to how the injury occurred, the carrier may be held responsible." 4 R. C. L., pp. 916-917, sec. 372.

And this rule applies to perishable commodities. Pennsylvania Railroad Co. v. Naive, 112 Tenn., 239, 79 S. W., 124, 64 L. R. A., 443; Southeastern Express Co. v. Fry Produce Co., 2 Tenn. App. R. 37.

In Railway Co. v. Naive, supra, (an action against a carrier for injury to a shipment of dressed poultry), the court said:

"We think there was no error in either instruction. The most that can be required of a shipper is that he shall deliver

his goods to the carrier in good condition, properly packed or prepared for shipment. From that time forward they are committed to the custody and management of the carriers— the initial and connecting ones. In the nature of things, he can know nothing of their management of the business, while they—each of them as to its own relation to the matter—can not, by means of their agents, fail to know all of the facts. It is nothing more than reasonable, therefore, that each, when sued for injury to the property, should be required to show that it has discharged its duty in respect thereto in the care of the property during transportation, and until delivery. When property has been delivered in good condition to a carrier, and it has been damaged while in possession of such carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption."

We are of the opinion that the plaintiffs' proof in the instant case was sufficient to require the defendant to show that it discharged its duty in respect to the care of the shipment while in its possession for transportation, and that the trial court erred in directing the jury to return a verdict for the defendant. The judgment of the circuit court dismissing plaintiffs' suit is therefore reversed, the directed verdict is set aside, and the case will be remanded to the circuit court of Sumner county for a trial before another jury. The costs of the appeal will be adjudged against the defendant Express Company. The costs accrued in the circuit court will await the future judgment of that court.

Crownover and DeWitt, JJ., concur.